# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 19-CV-1504 (ARR) (RER)
_____

EDUARD PALAGHITA,

Plaintiff,

VERSUS

ALKOR CAPITAL CORP., ALEKSANDR KORCHMAR, MARINA KORCHMAR, AND
FIVE TOWNS NISSAN LLC D/B/A "ROCKAWAY NISSAN,"

Defendants.

_____

**REPORT & RECOMMENDATION**
_____

**August 20, 2021**

**To the Honorable Allyne R. Ross**
**United States District Judge**

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff Eduard Palaghita ("Plaintiff" or "Palaghita") brings this action against Alkor Capital

Corp. ("Alkor"), Five Towns Nissan LLC ("Rockaway Nissan"), Aleksandr Korchmar ("Mr.

Korchmar"), and Marina Korchmar ("Mrs. Korchmar") (collectively, "Defendants"), alleging

violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York

Labor Law ("NYLL"), N.Y. LAB. LAW §§ 650 *et seq.* (Dkt. No. 1 ("Compl.")) ¶¶ 1–2).

Before the Court is Palaghita's refiled motion to strike the answer and enter default judgment

pursuant to Rules 16(f), 37(b), and 55 of the Federal Rules of Civil Procedure. (Dkt. No. 28 ("Pl.'s

1

Mot.")). After careful review of the record, for the reasons set forth herein, I respectfully recommend that the Court grant Palaghita's motion against all Defendants and that Palaghita be awarded $129,235.13, consisting of: (1) $29,934.48 unpaid overtime wages, (2) $1,536.90 unpaid gap-time wages, (3) $31,471.38 liquidated damages, (4) $21,000 unlawfully withheld taxes, (5) $10,000 statutory damages, (7) $19,380 attorney's fees, (8) $400 costs, and (9) $15,512.37 pre-judgment interest. Palaghita should also be awarded additional pre-judgment interest calculated through the date that the Clerk of Court enters final judgment and post-judgment interest awarded from the date judgment is entered to the date of payment.

## **BACKGROUND**

### I.      **Factual History**

Palaghita worked as a private chauffeur for Defendants from September 2014 through September 2017. (Compl. ¶ 15; Dkt. No. 29 ("Palaghita Decl.") ¶¶ 5–10). Throughout his employment, Palaghita was classified as an employee of either Alkor or Rockaway Nissan (the "Corporate Defendants").[1] (Compl. ¶ 24; Palaghita Decl. ¶¶ 12, 14). Alkor is a business corporation organized under New York law. (Compl. ¶ 6). It is the parent company of Rockaway Nissan, a car dealership and limited liability corporation organized under New York law. (*Id.* ¶¶ 7–8).

Palaghita drove Mr. and Mrs. Korchmar (the "Individual Defendants") "for both professional and personal matters . . . including, but not limited to, restaurants, office meetings, grocery and

---

[1] Palaghita was classified as an employee of Rockaway Nissan from September 2014 through December 2014. (Compl. ¶¶ 30, 34; Palaghita Decl. ¶¶ 12, 14). From January 2015 through the end of his employment, Palaghita was classified as an employee of Alkor. (Compl. ¶ 34; Palaghita Decl. ¶ 14).

department stores, and numerous other locations in and around New York City." (Compl. ¶ 21). Mr. Korchmar is the Chief Executive Officer, shareholder, proprietor, supervisor, and managing agent of Alkor. (*Id.* ¶ 9). He is also a partner, member, proprietor, supervisor, and managing agent of Rockaway Nissan. (*Id.* ¶ 10). Mrs. Korchmar is an owner, officer, proprietor, supervisor, and managing agent of Corporate Defendants. (*Id.* ¶ 11).

Individual Defendants actively participate in the day-to-day operations of Corporate Defendants. (Compl. ¶¶ 9–11). They "exercised control over the terms and conditions of [Palaghita's] employment, in that they had the power to: (i) hire and fire [Palaghita], (ii) determine [his] rates and methods of pay, (iii) determine and control [his] work schedule, (iv) supervise and control the performance of [his] work, and (v) create and maintain employment records." (*Id.* ¶ 12). They "actively supervised and directed [Palaghita's] work." (*Id.* ¶ 13).

Throughout the entirety of his employment with Defendants, Palaghita worked five days per week normally from 7:30 AM until 6:30 PM, or approximately 55 hours per week. (Compl. ¶¶ 27–28; Palaghita Decl. ¶ 11). Palaghita was not paid overtime compensation. (Compl. ¶¶ 29, 31, 33, 35, 38, 57, 69; Palaghita Decl. ¶ 21). Defendants did not pay Palaghita any wages for his work during the first week of January 2015 or for his last two days of employment. (Compl. ¶¶ 36, 39; Palaghita Decl. ¶¶ 15, 17). Defendants withheld money for taxes from Palaghita's paychecks but failed to pay that money to the government on his behalf. (Compl. ¶ 42; Palaghita Decl. ¶ 19). Palaghita never received a wage notice upon hire or wage statements with his paychecks, and Defendants did not maintain time or pay records. (Compl. ¶¶ 25, 43, 47, 60, 79; Palaghita Decl. ¶¶ 9, 20).

## II.     Procedural History

Palaghita filed suit on March 15, 2019. (Compl.). The Summons and Complaint were served on Alkor, as well as Mr. and Mrs. Korchmar at an address on Oceana Drive East in Brooklyn, New York. (Dkt. Nos. 5–7). The Individual Defendants were also served with the Summons and Complaint via regular first-class mail. (Dkt. Nos. 6–7). Rockaway Nissan was served with the Summons and Complaint at its address on Burnside Avenue in Inwood, New York. (Dkt. No. 8). Scott Mandel ("Mandel") appeared as counsel on behalf of Alkor and the Individual Defendants ("Answering Defendants"). (Dkt. Nos. 9–10). Those Defendants timely answered the Complaint. (Dkt. No. 11). Rockaway Nissan never appeared in this action either through counsel or otherwise.

The Court referred this case to mediation in September 2019. (Dkt. No. 12). On October 29, 2019, the parties advised the Court that they reached a settlement in principle. (Dkt. No. 13). But the parties never signed the settlement agreement. (Dkt. No. 22 ("Tr.") at 4:11–13, 23–24).

Defendants had promised payment to Palaghita prior to this litigation. (Dkt. No. 30 ("Cilenti Decl." ¶ 32).[2] Therefore, as a condition of settlement, Answering Defendants were required to make the full settlement payment by November 11, 2019 to be placed in Mandel's escrow account. (Id.). Mr. Korchmar assured Mandel that he would make the required payment; however, no payment was received on or before November 11, 2019. (Id. ¶ 34). Mr. Korchmar sent Palaghita a text message on November 14, 2019 and stated that the settlement payment "was processed this morning." (Id. ¶ 35; Dkt. No. 30-2 ("Ex. B")). But the money was not deposited. (Cilenti Decl. ¶ 35). Mr. Palaghita assured Mandel that he would deposit the money the following day, November

---

[2] Justin Cilenti ("Cilenti") is a member of the law firm Cilenti & Cooper, PLLC, attorneys of record for Palaghita. (Cilenti Decl. ¶ 1).

15, 2019. (*Id.* ¶ 36). The money was not deposited, and the parties agreed to a one-week extension. (*Id.* ¶¶ 36–37). Mr. Korchmar did not deposit the settlement money by the new deadline of November 22, 2019, but he promised Mandel that the money would be deposited within another four days. (*Id.* ¶ 38). It was not. (*Id.* ¶ 39). Instead, on November 26, 2019, Mr. Korchmar requested further extension until December 6, 2019. (*Id.*). Palaghita denied this request and informed the Court that the parties had reached an impasse. (*Id.* ¶¶ 39–40; Dkt. No. 14).

At a status conference held on December 12, 2019, Mandel advised the Court that he intended to file a motion to withdraw as counsel due to breakdowns in his relationship with Answering Defendants, including failure to pay attorney's fees. (Cilenti Decl. ¶ 41). The Court directed Mandel to serve his clients with his letter to withdraw. (Min. Entry dated 12/12/2019).

Mr. Korchmar was present along with Mandel at a hearing on January 14, 2020. (Min. Order dated 1/14/2020). He provided a check for the settlement payment. (*Id.*; Cilenti Decl. ¶ 44). Mandel's motion to withdraw as counsel was held in abeyance until the settlement check cleared. (Min. Order dated 1/14/2020). When the check did not clear, (Dkt. No. 18), the Court granted the motion to withdraw, (Order dated 2/5/2020). In its Order, the Court noted that unless it retained new counsel, Alkor would be deemed in default. (*Id.*). The Court also ordered discovery to proceed. (*Id.*).

At a status conference on March 4, 2020, Korchmar requested until March 31, 2020 to make the outstanding settlement payment. (Cilenti Decl. ¶ 48; Tr. 2:16–19). Palaghita agreed, but specified both off the record and on the record that he would not agree to any additional extensions. (Cilenti Decl. ¶¶ 48–49; Tr. 2:19–24; *see also* Min. Entry dated 3/4/2020). On the record, Mr. Korchmar was informed that if he failed to pay by the deadline, Palaghita would immediately

move to strike the Answer and for entry of default judgment against all Defendants. (Cilenti Decl. ¶¶ 48–49; Tr. at 2:20–24). He also understood that Palaghita would seek the full amount alleged in the complaint. (Cilenti Decl. ¶ 50; Tr. at 4:5–9).

Mr. Korchmar received an email on March 27, 2020 reminding him that the deadline to pay was approaching. (Cilenti Decl. ¶ 51). On March 30, 2020, one day before the deadline to pay, Mr. Korchmar requested a phone call with Palaghita's counsel. (*Id.* ¶ 52). Mr. Korchmar was reminded that Palaghita would not agree to any additional extensions. (*Id.*). On March 31, 2020, Mr. Korchmar requested another extension of unspecified duration, citing the COVID-19 pandemic. (*Id.* ¶ 53; Dkt. No. 20).

Because of Defendants' consistent failure to make the promised payment resulting in the ongoing delay of this litigation, Palaghita filed a status report and proposed a briefing schedule for a motion to strike the answer and enter default judgment against all Defendants. (Dkt. No. 20). The Court adopted the proposed briefing schedule, (Order dated 4/3/2020), and Palaghita emailed the Court's order to Mr. Korchmar, (Dkt. No. 21). Palaghita filed his first motion, (Dkt. Nos. 23–26), and emailed it to Mr. Korchmar. (Dkt. No. 26). I denied the motion without prejudice to renew because there was no indication in the record that any of the Answering Defendants consented to service by email. (Dkt. No. 27). Palaghita filed his renewed motion on March 17, 2021. (Dkt. Nos. 28–32). This motion and my order denying the first motion was properly served on all Defendants. (Dkt. No. 32). Your Honor referred the motion to me for a report and recommendation. (Order dated 3/17/2021).

## DISCUSSION

### I.      Legal Standards

#### A.   Sanctions Under Rules 16(f) and 37(b)

All litigants are obligated to comply with court orders and to participate in negotiations and other pre-trial conferences in good faith. *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (quoting *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1990)); *Caraballo v. Homecomings Fin.*, No. 12 Civ. 3127 (JPO) (KNF), 2013 WL 1499403, at *2 (S.D.N.Y. Apr. 12, 2013). Under Rule 16 of the Federal Rules of Civil Procedure, the Court may issue sanctions, "including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party . . . is substantially unprepared to participate—or does not participate in good faith—in the conference; or fails to obey a scheduling order or other pretrial order." Fed. R. Civ. P. 16(f)(1). A litigant fails to participant in good faith when they repeatedly and without reasonable justification cause continued delay of the proceedings. *See U.S. Freight Co. v. Penn Cent. Transp. Co.*, 716 F.2d 954, 955 (2d Cir. 1983) (relying on "the established principle that courts act within their discretionary powers when they impose sanctions for impeding or extending court proceedings."); *Acharya v. Solanki*, No. 18 Civ. 08010 (MKV), 2020 WL 6700526, at *2–3 (S.D.N.Y. Nov. 13, 2020). It is important that the non-compliant party receive "proper notice of the order(s) with which they failed to comply as well as an opportunity to argue [their] case against the proposed sanction." *Acharya*, 2020 WL 6700526, at *2 (quotations and citation omitted).

Rule 37(b) of the Federal Rules of Civil Procedure empowers a court to "(iii) strik[e] pleadings in whole or in part . . . [or] (vi) render[] a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A). A district court has broad discretion to impose sanctions under Rule 37(b).

*Sanchez v. Jyp Foods Inc.*, No. 16 Civ. 4472 (JLC), 2018 WL 4502008, at *3 (S.D.N.Y. Sept. 20, 2018) (citing *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010)). "However, use of the most severe sanctions should be limited to cases involving willfulness, bad faith, or fault on the part of the non-compliant party." *Campos v. Quentin Mkt. Corp.*, No. 16-CV-05303 (DIL) (RER), 2017 U.S. Dist. LEXIS 193699, at *5 (E.D.N.Y. Nov. 21, 2017) (collecting cases), *adopted by* 2018 U.S. Dist. LEXIS 42337 (Mar. 13, 2018). The Second Circuit has identified several non-exclusive and non-dispositive factors to evaluate whether severe sanctions are just, "including: (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Sanchez*, 2018 WL 4502008, at *3 (quoting *Agiwal*, 555 F.3d at 302–03). "[T]he Court need not find that a party acted in bad faith." *Mahoney v. Yamaha Motor Corp.*, 290 F.R.D. 363, 366 (E.D.N.Y. 2013).

When entry of default is an appropriate sanction under Rule 37, the Court proceeds with analysis under Rule 55. *See Liu v. Millennium Motors Sports, LLC*, No. 17-CV-6438 (RPK) (RER), 2020 WL 7028924, at *5 (E.D.N.Y. Nov. 5, 2020), *adopted by* 2020 WL 7024378 (Nov. 30, 2020) [hereinafter *Liu I*]; *Lopez v. Cajmant LLC*, No. 15-CV-539 (SLT) (RER), 2016 WL 7017361, at *2 (E.D.N.Y. Dec. 1, 2016).

### B.  Default Judgment

It is preferable for cases to be resolved on their merits, *see City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011), but default judgment is an appropriate sanction where lesser sanctions are not feasible, *see Vargas v. Jet Peru-Courier Corp.*, No. 15-CV-6859

8

(RRM) (PK), 2018 WL 1545699, at *4 (E.D.N.Y. Mar. 14, 2018), 2018 WL 1545679 (Mar. 28, 2018); *Liu v. Millenium Motors Sports*, No. 17-CV-06438 (RPK) (RER), 2021 U.S. Dist. LEXIS 99088, at *5 (E.D.N.Y. May 24, 2021), *adopted by* 2021 U.S. Dist. LEXIS 148059 (Aug. 6, 2021) [hereinafter *Liu II*].

Rule 55 of the Federal Rules of Civil Procedure outlines a two-part standard for a party to prevail on a default judgment motion. *Mickalis Pawn Shop*, 645 F.3d at 129. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the [opposing] party's default." FED. R. CIV. P. 55(a); *see Mickalis Pawn Shop*, 645 F.3d at 128. However, in certain circumstances, default may be entered by the court. *Id.* ("Although Rule 55(a) contemplates that entry of default is a ministerial step to be performed by the clerk of court, . . . a district judge also possesses the inherent power to enter a default." (citations omitted)); *see also Liu I*, 2020 WL 7028924, at *6.

Plaintiff may then move for a default judgment. FED. R. CIV. P 55(b)(2). At this stage, all well-pleaded allegations are taken as true. *Xu v. JNP Bus Serv.*, No. 16-CV-245 (AMD) (ST), 2018 U.S. Dist. LEXIS 54238, at *5 (E.D.N.Y. February 26, 2018) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)), *adopted by* 2018 U.S. Dist. LEXIS 52039 (Mar. 28, 2018). However, a plaintiff still bears the burden of establishing that they are entitled to recovery. *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 29 (E.D.N.Y. 2015) (collecting cases). Despite entry of default, a defendant does not admit to any legal conclusions in the complaint. *Xu*, 2018 U.S. Dist. LEXIS 54238, at *6 (citation omitted). The Court must determine if the unchallenged facts constitute a sufficient cause of action. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) ("[A] district court has discretion under Rule

55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action.").

On a motion for default judgment, damages are assessed separately, and the plaintiff must prove that the compensation sought "naturally flow[s] from the injuries pleaded." *Greyhound*, 973 F.2d at 158. A plaintiff's recovery of damages must reflect that which was requested in the pleadings. *See* FED. R. CIV. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *see also Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007). The Court may hold an evidentiary hearing to determine damages. FED. R. CIV. P. 55(b)(2). However, "it [is] not necessary for the District Court to hold a hearing, as long as it ensure[s] that there [is] a basis for the damages specified in a default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). In determining damages, the court may rely on "detailed affidavits and documentary evidence," as well as the Court's knowledge of the record from experience with the case. *Id.* If an employer fails to maintain wage and hour records, the plaintiff may rely on his recollection to approximate the wages owed. *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 332–33, 335 (S.D.N.Y. 2005).

## II. The Court Should Strike the Answer

Upon review of the record, on balance, it is appropriate to strike the Defendants' answer.

### A. Willfulness or the Reason for Defendants' Conduct

When evaluating the reason for a defendants' conduct, courts consider "the [d]efendants' broader refusal to meaningfully participate in [the] litigation." *Gesualdi v. Metro. Enterprises, Inc.*, No. 15-CV-1378 (ADS) (GRB), 2016 WL 6988830, at *2 (E.D.N.Y. Nov. 29, 2016) (collecting cases); *see Garden City Boxing Club, Inc. v. Ascensio*, 04-CV-3474 (DGT) (MDG), 2006 WL

8445872, at *3 (E.D.N.Y. Aug. 18, 2006) ("[D]efendants have failed to proceed with diligence throughout this action."). The Court cannot require a party to settle; however, all parties must participate in court proceedings, including settlement conferences, in good faith. *See Francis v. Women's Obstetrics & Gynecology Grp., P.C.*, 144 F.R.D. 646, 647–48 (W.D.N.Y. 1992) (citing Fed. R. Civ. P. 16). A party does not act in good faith where it delays the litigation by repeatedly withholding a promised settlement payment and failing to participate meaningfully. *See Zurita v. Bergen Pizza Inc.*, No. 12-CV-3874 (KAM) (MDG), 2015 WL 1602140, at *3 (E.D.N.Y. Mar. 5, 2015) (recommending striking the answer and entering default judgment for failure to appear at a conference and failure to make settlement payments), *adopted by* 2015 WL 1602148 (Apr. 2, 2015); *Garden City*, 2006 WL 8445872, at *3 (recommending entering default after defendants' repeated breach of settlement agreements).

Answering Defendants participated in this litigation by answering the Complaint, (Dkt. No. 11), participating in mediation sessions, (Dkt. No. 13), and appearing at conferences before this Court, (Min. Entry dated 12/12/2019; Min. Order dated 1/14/2020; Min. Entry dated 3/4/2020). However, their participation has not been meaningful. First, Alkor failed to retain new counsel as ordered by the Court on February 5, 2020. (*See* Order dated 2/5/2020; Min. Entry dated 3/4/2020). Further, Defendants repeatedly promised settlement payments to Palaghita but never paid, (Cilenti Decl. ¶¶ 32–53), including after the Court imposed deadlines to complete discovery, (Order dated 2/5/2020), and to make the settlement payment, (Min. Entry dated 3/4/2020).

Defendants' unfulfilled promises to pay began before this litigation, (Cilenti Decl. ¶ 32), and continue through the writing of this Report and Recommendation. Mr. Korchmar reassured Mandel and Palaghita that he would pay at least six times throughout the life of this case. (*See id.* ¶¶ 34–53). He even went so far as to bring a check into Court that ultimately did not clear. (*Id.*

¶ 44; Dkt. No. 18). These actions have significantly delayed resolution of this matter. Mr. Korchmar has offered no reasonable explanation for his continuous requests for extensions to make the settlement payment agreed upon in October 2019. As Palaghita suggests, Mr. Korchmar's explanation that the inability to pay is related to the COVID-19 pandemic is insufficient in light of the long history of unfulfilled promises to pay. (*See* Cilenti Decl. ¶ 53).

Answering Defendants did not meaningfully participate in pre-trial negotiations and conferences. Their conduct indicates that they do not intend to abide by the settlement reached and has delayed the adjudication of the merits of this case for nearly two years. This factor weighs in favor of severe sanctions.

## B. Efficacy of Lesser Sanctions

"[D]istrict courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *Glob. NAPs*, 624 F.3d at 148 (citing *John B. Hull, Inc. v. Petrol. Prods., Inc.*, 845 F.2d 1172, 1176–77 (2d Cir. 1988)). If defendants willfully abandon their defense of the case, case-ending sanctions are appropriate. *Montblanc-Simplo GmbH v. Colibri Corp.*, 692 F. Supp. 2d 245, 253 (E.D.N.Y. 2010) (collecting cases); *Vargas v. Jet Peru-Courier Corp.*, No. 15-CV-6859 (RRM) (PK), 2018 WL 1545699, at *4 (E.D.N.Y. Mar. 14, 2018), *adopted by* 2018 WL 1545679 (Mar. 28, 2018).

On February 5, 2020 after Answering Defendants had failed at least three times to make the settlement payment and caused delay of nearly four months, the Court ordered the parties to proceed with discovery. (Order dated 2/5/2020; *see* Cilenti Decl. ¶¶ 32–46). Instead, Mr. Korchmar appeared at a status conference on March 4, 2020 and requested yet another chance to make the settlement payment. (Min. Entry date 3/4/2020). Palaghita generously agreed. (*Id.*). But Mr.

Korchmar again missed his deadline and requested another extension. (Dkt. No. 20). As was warned on the record, this request was denied and Palaghita filed his first motion to strike and enter default judgment. (Tr. 2:20–24; Cilenti Decl. ¶¶ 53–54; Dkt. No. 23). Defendants have not responded to Palaghita's motions or the Court's orders. (*See* Dkt. Nos. 23, 30; Order dated 3/4/2021 ("Defendants will have until April 9, 2021 to serve by mail and file with the Court any opposition to the Motion")).

A monetary sanction would serve little purpose since Answering Defendants appear to be unable to make the agreed upon settlement payment. *See Garden City*, 2006 WL 8445872, at \*3. They willfully abandoned the settlement agreement and their defense of the case; therefore, less harsh sanctions would prove fruitless. *See Montblanc-Simplo GmbH.*, 692 F. Supp. 2d at 252–53 (citing *Microsoft Corp. v. Comput. Care Ctr., Inc.*, No. 06–CV–1429 (SLT) (RLM), 2008 U.S. Dist. LEXIS 112080, at \*14 (E.D.N.Y. Apr. 8, 2008), *adopted by* 2008 U.S. Dist. LEXIS 77853 (Sept. 10, 2008)).

### C.   Duration of Non-Compliance

"[A] period 'as brief as a few months have [sic] been held to weigh in favor of dispositive sanctions . . . [a]nd periods of six months or more weigh even more heavily toward such remedies.'" *Vargas*, 2018 WL 1545699, at \*4 (quoting *Local Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Const.*, 88 F. Supp. 3d 250, 265–66 (S.D.N.Y. 2015) (collecting cases)); *see also Campos*, 2017 U.S. Dist. LEXIS 193699, at \*7–8 (imposing sanctions where defendants stayed the action for almost six months).

The parties first reached a settlement in principle in October 2019. (Dkt. No. 13). After that date, Defendants had numerous opportunities to make the settlement payment or participate in

discovery and repeatedly failed to do so. The Court granted Mandel's motion to withdraw in February 2020 after Mr. Korchmar presented a settlement check that did not clear. (*See* Min. Order dated 1/14/2020; Dkt. No. 18; Order dated 02/05/2020). To date, no new counsel has appeared to represent Defendants. Palaghita nevertheless agreed to a last chance for Mr. Korchmar to make the settlement payment by the end of March 2020, five months after the parties first agreed upon a settlement amount. (Min. Entry dated 3/4/2020). Almost six months after reaching a settlement agreement and repeated assurances by Mr. Korchmar that he would make the agreed upon payment, Palaghita filed his first motion. (Dkt. No. 23). It has now been nearly two years since the parties first reached a settlement agreement. I find that this factor weighs heavily in favor of granting the requested sanctions.

### D.  Adequate Warnings for Non-Compliance

A *pro se* defendant must receive "adequate warning" or notice of the consequences for noncompliance before a court imposes sanctions. *Lopez*, 2016 WL 7017361, at *2 (citing *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 452 (2d Cir. 2013); *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 160 (2d Cir. 2012)). When the Court has issued warnings on the record, "[d]efendants cannot credibly argue that [they were] not sufficiently warned that serious sanctions were imminent. *Vargas*, 2018 WL 1545699, at *4 (quoting *Guggenheim*, 722 F.3d at 453); *see also Car-Wi Const.*, 88 F. Supp. 3d at 267 (concluding that multiple warnings from the court and two motions for default by plaintiffs were sufficient).

Answering Defendants were sufficiently warned that Corporate Defendants would be deemed in default if no new counsel appeared. When the Court granted Mandel's motion to withdraw as counsel it warned that "unless new counsel is retained to represent the corporate defendant it will

be deemed in default" and directed Mandel to mail a copy of that order to his clients. (Order dated 2/5/2020).

Answering Defendants also received sufficient notice of possible default judgment against all Defendants. After Mandel withdrew as counsel, Mr. Korchmar attended a status conference in March 2020 at which Palaghita stated clearly that he would respond to another unfulfilled promise to pay by filing a motion to strike the answer and enter of default judgment against all Defendants. (Tr. at 2:20–24, 4:4–10; Cilenti Decl. ¶¶ 49–50). Palaghita's first motion to strike and the Court's Order containing the briefing schedule for that motion was served on Defendants only via email.[3] (Dkt. Nos. 21, 26). Thus, I denied the motion without prejudice to refile and issued a new briefing schedule. (Order dated 03/04/2021). Palaghita served that order and his renewed motion to strike on Defendants via mail. (Dkt. No 32). Given the history of this case, the March 4, 2021 order and Plaintiff's renewed motion serve as sufficient warning of the potential entry of default judgment against all Defendants. *See Lopez*, 2016 WL 7017361, at *2. No defendant has filed their opposition or otherwise attempted to communicate with the Court. This factor also weighs in favor of granting sever sanctions against Answering Defendants.

\*　　　　\*　　　　\*

Accordingly, I respectfully recommend that the Court strike the Answer and, as discussed below, enter default and default judgment against all Defendants.

---

[3] The Court specifically directed Palaghita to "mail a copy of this Order on the [D]efendants." (Order dated 4/3/2020). Even if consent for electronic service could be implied, Mr. Korchmar's email address is not on file with the Court. After Mandel withdrew as counsel, he was directed to provide to the Court the contact information for his clients. (Order dated 2/5/2020). He provided only their mailing addresses. (Dkt. No. 19). Palaghita also did not submit email chains confirming Mr. Korchmar's receipt of emails containing the Order and Motion.

### III.     The Court Should Enter All Defendants' Default

A party's default is properly entered when that party "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." FED. R. CIV. P. 55(a). A party fails to defend when it engages in "obstructionist litigation tactics" or willfully disregards a court order to appear through counsel. *See Mickalis*, 645 F.3d at 129–30 (citing *Au Bon Pain*, 653 F.2d at 65; *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305 (2d Cir. 1991)). "It is settled law that a corporation may not appear in a lawsuit against it except through an attorney, and that, where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it." *Khurana v. JMP USA, Inc.*, 14-CV-4448 (SIL), 2017 WL 1251102, at *2 (E.D.N.Y. Apr. 5, 2017) (quoting *Grace v. Bank Leumi Tr. Co.*, 443 F.3d 180, 192 (2d Cir. 2006)); *see also Garden City*, 2006 WL 8445872, at *3 (citing *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993) (collecting cases)). This remains true even where an individual whose interests may at times "overlap [with] but are not identical in all respects" to the corporation's continues to litigate his personal liability *pro se*. *See Khurana*, 2017 WL 1251102, at *2.

Defendants have failed to defend their case. Rockaway Nissan never appeared in this litigation through counsel or otherwise. Alkor along with the Individual Defendants however answered the Complaint, (Dkt. No. 11), participated in mediation, (Dkt. No. 13), and appeared before this Court on several occasions, (Min. Entry dated 12/12/2019; Min. Order dated 1/14/2020; Min. Entry dated 3/4/2020 (Mr. Korchmar only)); however, mere appearance is insufficient. *See Mickalis*, 645 F.3d at 129–30. Despite a warning that failure to retain counsel would result in default against the corporation, (*see* Order dated 2/5/2020), Alkor did not retain new counsel. Further, as discussed *supra* III.A., Mr. and Mrs. Korchmar willfully abandoned their defense of the case by repeatedly assuring that they would make the agreed-upon settlement payment and requesting indefinite

extensions of time to pay without reasonable justification. (*See* Cilenti Decl. ¶¶ 34–53). Answering Defendants have engaged in obstructionist litigation tactics; and therefore, they failed to defend their case. They also have not responded to Plaintiff's pending motion. I respectfully recommend that the Court enter default of all Defendants.

## IV.   The Court Should Enter Default Judgment Against All Defendants

Palaghita alleges overtime violations of the FLSA and NYLL. (Compl. ¶¶ 51–63, 64–81).  He also alleges unlawful deductions and failure to pay gap-time wages; he seeks statutory and liquidated damages under the NYLL. (Compl. ¶¶ 64–81).

As a threshold matter, Palaghita must establish that a non-exempt employer-employee relationship existed under the FLSA and NYLL. *See Lopez*, 2020 WL 9814059, at *3; *Fermin*, 93 F. Supp. 3d at 31–32, 34. A plaintiff must, at a bare minimum, include allegations that track the statutory language and allow the court to make reasonable inferences. *See Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH) (SJB), 2018 U.S. Dist. LEXIS 85043, at *13, *25–26 (E.D.N.Y. May 18, 2018), *adopted by* 2018 U.S. Dist. LEXIS 156601 (Sept. 12, 2018); *Pintor v. Park King at JFK, LLC*, No. 16-CV-6269 (PKC) (PK), 2018 U.S. Dist. LEXIS 28940, at *10 (E.D.N.Y. Feb. 21, 2018), *adopted by* 2018 U.S. Dist. LEXIS 39352 (Mar. 8, 2018). Palaghita has met this burden.

### A.  Defendants are Employers under the FLSA and NYLL

Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "[The NYLL] is the state analogue to the federal FLSA." *Fermin*, 93 F. Supp. 3d at 34 (quotation marks and citations omitted). The NYLL's definition for "employer" centers on the degree of control that the employer exercised

17

over the employee. *Id.* Generally, where liability is found under the FLSA, it is also found under the NYLL. *Id.* at 37 (collecting cases); *Martir v. Huntington Provisions Inc.*, No. 19-CV-2412 (DRH) (AYS), 2020 WL 2736696, at *3 (E.D.N.Y. Apr. 29, 2020 (citing *Guardado v. 13 Wall St., Inc.*, No. 15-CV-2482, 2016 WL 7480358, at *5 (E.D.N.Y. Dec. 2, 2016), *adopted by* 2016 WL 7480363 (Dec. 29, 2016)), *adopted by* 2020 WL 2735173 (May 26, 2020).

      i.   *Individual Defendants*

An individual is an employer under FLSA if they: (1) make hiring and firing decisions; (2) supervise and control an employee's work schedule or employment conditions; (3) determine an employee's pay rate or method; and (4) maintain employment records. *Martir*, 2020 WL 2736696, at *3 (citing *Coley v. Vannguard Urban Improvement Ass'n, Inc.*, No. 12-CV-5565 (PKC) (RER), 2018 WL 1513628, at *4 (E.D.N.Y. Mar. 27, 2018), *as amended* (Mar. 29, 2018)). The objective of this test is to evaluate the extent to which the employee depends on the employer as a matter of "economic reality." *Agebrink v. Model Serv. LLC*, 787 F. App'x 22, 25 (2d Cir. 2019) (summary order) (citing *Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 139 (2d Cir. 2017)).

The individual defendants meet the FLSA definition of employer. Palaghita alleges that all Defendants employed him within the statutory definition of FLSA, and that Mr. and Mrs. Korchmar "had the power to: (i) hire and fire [Palaghita], (ii) determine [his] rates and methods of pay, (iii) determine and control [his] work schedule, (iv) supervise and control the performance of [his] work, and (v) create and maintain employment records." (Compl. ¶¶ 12, 53). Mr. Korchmar is the Chief Executive Officer, shareholder, proprietor, supervisor, and managing agent of Alkor. (*Id.* ¶ 9). He is also a partner, member, proprietor, supervisor, and managing agent of Rockaway Nissan. (*Id.* ¶ 10). Mrs. Korchmar is an owner, officer, proprietor, supervisor, and

managing agent of both Corporate Defendants. (*Id.*   ¶ 11). Mr. and Mrs. Korchmar actively participate in the day-to-day operations of both corporate defendants. (*Id.* ¶¶ 9–11). Palaghita asserts that "Individual Defendants assigned all work to be performed by [him], and supervised, managed, and instructed [him] on how to go about the performance of [his] job duties. (Palaghita Decl. ¶ 7). These allegations are sufficient to show that Individual Defendants were employers under the FLSA and NYLL. *See Fermin*, 93 F. Supp. 3d at 32 (quoting *Garcia v. Badyna*, No. 13 Civ. 4021 (RRM) (CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014)); *Martir*, 2020 WL 2736696, at *3.

### ii.   *Corporate Defendants*

A corporate employer is subject to FLSA liability "if [the employer] meets the criteria for either enterprise or individual coverage." *Miranda v. Astoria Provisions, LLC*, No. 19-CV-02923 (EK) (PK), 2020 WL 6370058, at *4 (E.D.N.Y. July 24, 2020), *adopted by* 2020 WL 5810160 (Sept. 30, 2020). To establish enterprise coverage, courts consider whether the employer:

> has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A)(i)–(ii); *see also Fermin*, 93 F. Supp. 3d at 33.

Palaghita established that Defendants were employers subject to enterprise liability. Palaghita was an employee of Rockaway Nissan from September 2014 through December 2014. (Compl. ¶¶ 30, 34). He was then employed by Alkor, the parent company of Rockaway Nissan, from January 2015 through September 2017. (*Id.* ¶ 34). Palaghita alleges that Rockaway Nissan is a car dealership and includes allegations that track the language of the FLSA and the NYLL. (*Id.* ¶¶ 8,

51–63, 64–81). He states that "Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA." (*Id.* ¶ 52). He also alleges that Corporate Defendants individually and jointly had gross revenues in excess of $500,000. (*Id.* ¶¶ 54–55).

Palaghita does not allege that he himself was involved in an activity affecting interstate commerce. However, it is reasonable to infer that cars at the dealership were moved from or produced in other states. *See Pintor*, 2018 WL 2074157, at *3 (citing *Fermin*, 93 F. Supp. 3d at 33); *Liu II*, 2021 U.S. Dist. LEXIS 99088, at *9 (citing *Logan v. World Luxury Cars*, No. 15-CV-248 (RRM) (PK), 2017 U.S. Dist. LEXIS 157979, at *7–8 (E.D.N.Y. Sept. 25, 2017) (concluding that a used car dealership was covered by both the enterprise and individual coverage tests), *adopted by* 2018 U.S. Dist LEXIS 96947 (June 1, 2018)). Alkor is the parent corporation of several business including the car dealership, as well as construction and development firms. (Compl. ¶ 8). Thus, it is also reasonable to infer that Alkor's materials were moved from or produced in other states. *See Bravo v. Finest Maint. Inc.*, No. 13-CV-342 (SJF) (GRB), 2015 WL 5093599, at *4 (E.D.N.Y. June 15, 2015) (building maintenance/construction services business), *adopted by* 2015 WL 5093278 (Aug. 27, 2015); *Shim v. Millennium Grp.*, No. 08-CV-4022 (FB) (VVP), 2009 WL 211367, at *3 (E.D.N.Y. Jan. 28, 2009) (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F.Supp. 504, 530 (S.D.N.Y. 1998) ("[V]irtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA.").

As Defendants need only meet the requirements for enterprise or individual coverage, *see Logan*, 2017 U.S. Dist. LEXIS 157979, at *7, Palaghita has sufficiently established that Corporate Defendants were employers under the FLSA and NYLL standards.

B.  Palaghita was an Employee under the FLSA and NYLL

The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e). Two types of employees are covered: (1) "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce;" and (2) employees who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). However, there are several types of employment exempt from the overtime requirements of the FLSA.[4] *See* 29 U.S.C. § 213. Much like the definition of employer under the NYLL, the definition of employee is nearly identical to the FLSA standard. *Fermin*, 93 F. Supp. 3d at 34.

Palaghita alleges that he was an employee within the meaning of the FLSA and NYLL. (Compl. ¶¶ 53, 65). As a driver, Palaghita's employment was not exempted under the FLSA. *See Pintor*, 2018 WL 2074157, at *4 (citing 29 U.S.C. § 213) (noting that a driver or driver's helper making local deliveries is exempt, but driver not "hired to perform or compensated based on delivery duties" is not exempt). These minimal allegations are sufficient to meet the FLSA and NYLL definitions of employee. *See Miranda*, 2020 WL 6370058, at *5–6.

\*              \*              \*

---

[4] Exemptions are "affirmative defenses, for which employers have the burden of proof." *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014), *aff'd*, 798 F.3d 72 (2d Cir. 2015) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974)).

Accordingly, I respectfully recommend that Your Honor hold Defendants jointly and severally liable under the FLSA and NYLL.[5] *See Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) ("[A] corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable." (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)); *see also Fermin*, 93 F. Supp. 3d at 37 (collecting cases).

## V.     Damages

### A.  Statute of Limitations

The FLSA affords a two-year statute of limitations to bring a cause of action unless the violation was willful, in which case the case the limitations period is extended to three years. 29 U.S.C. § 255(a). The NYLL statute of limitations is six years from the date that the employee filed a complaint. N.Y. LAB. LAW §§ 198(3), 663(3). Here, the NYLL affords the greater recovery. I therefore respectfully recommend that Plaintiffs be awarded damages under the NYLL. *See Liu*, 2021 U.S. Dist. LEXIS 99088, at *14; *Tejada v. La Selecta Bakery, Inc.*, No. 17-CV-5882 (EK) (RER), 2020 WL 7249393, at *2 (E.D.N.Y. Sept. 23, 2020), *adopted by* 2020 WL 6937882 (Nov. 25, 2020).

Palaghita filed his Complaint on March 15, 2019. (Compl.). His NYLL period thus runs from March 15, 2013 through March 15, 2019.

---

[5] Nissan is liable only for the period during which Palaghita was classified as its employee—September 2014 through December 2014. (Palaghita Decl. ¶¶ 14–15). Answering Defendants are responsible for the entire employment period.

B.  Unpaid Wages[6]

    i.    *Overtime Compensation*

Under the FLSA and NYLL, plaintiffs are entitled to compensation of one- and one-half times their regular hourly rate for overtime, defined as time worked over forty hours per week. *See* 29 U.S.C. § 207(a)(1); N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.4. "In the absence of an express agreement otherwise, courts will assume that an employee's weekly salary is intended to cover only forty hours per week." *Lee v. Hudson River Cafe, Corp.*, No. 12-CV-463 (GBD) (FM), 2016 WL 11482345, at \*4 (S.D.N.Y. Aug. 15, 2016), *adopted as modified*, 2016 WL 5092591 (Sept. 19, 2016) (citing *Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999)).

Palaghita submits a declaration as a basis on which he requests the Court award damages.[7] Throughout the entirety of his employment with Defendants, Palaghita worked five days per week normally from 7:30 AM until 6:30 AM, or approximately 55 hours per week. (Compl. ¶¶ 27–28; Palaghita Decl. ¶ 11). Palaghita was not paid overtime compensation for the additional fifteen hours per week he regularly worked. (Compl. ¶¶ 29, 31, 33, 35, 38, 57, 69). Palaghita's starting salary was $60,000 per year. (Palaghita Decl. ¶ 12). Two weeks into his employment, his salary was increased to $70,000 per year. (*Id.* ¶ 13). His salary remained $70,000 through December

---

[6] Calculations relating to unpaid compensation can be found in the Appendix.

[7] Although not clearly requested in either his motion to strike and enter default judgment, (Pl.'s Mot.), or his memorandum of law in support of the motion, (Dkt. No. 31), Palaghita's supporting documentation provides a sufficient basis on which award damages as requested in the Complaint, (*see* Dkt. Nos. 29 –30; Compl.). Palaghita's declaration was signed, dated, and declared under penalty of perjury. (Palaghita's Decl.). This Court will accept the declaration for the purpose of determining damages. *See LeBoeuf, Lamb, Greene, & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65–66 (2d Cir. 1999) ("Section 1746 allows for the submission of an unsworn declaration to a court if it is subscribed by [the declarant], as true under penalty of perjury, and dated, in *substantially* the following form: . . . I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)") (quotations omitted) (quoting 28 U.S.C. § 1746)).

2016. (*Id.* ¶¶ 13, 16). From January 2017 until the end of his employment, Palaghita's salary was $72,500 per year. (*Id.* ¶ 16).

Consequently, I respectfully recommend Palaghita be awarded the requested unpaid overtime compensation amounting to $29,934.48.

### ii. *Unpaid Gap-Time Wages*

"If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments." N.Y. LAB. LAW § 663. "A gap-time claim is one . . . in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Coley v. Vannguard Urban Improvement Ass'n, Inc.*, No. 12-CV-5565 (PKC) (RER), 2018 WL 1513628, at *9 (E.D.N.Y. Mar. 27, 2018), *as amended* (Mar. 29, 2018) (quoting *Lundy v. Catholic Health Sys.*, 711 F.3d 106, 115 (2d Cir. 2013)). The Court may award gap-time wages at the plaintiff's regular rate. *Id.* (citing *Hernandez v. NJK Contractors, Inc.*, No. 09-CV-4812 (RER), 2015 WL 1966355, at *42 (E.D.N.Y. May 1, 2015)).

Palaghita alleges that he was not paid for the first week of January 2015 or for his last two days of employment. I respectfully recommend that Palaghita be awarded the straight hours he worked at his regular hourly rate in the total amount of $1,536.90.

## A.  Liquidated Damages

Under both the FLSA and NYLL, plaintiffs are entitled to liquidated damages in an amount equal to unpaid wages. 29 U.S.C. § 216(b); N.Y. LAB. LAW § 663(1). If the employer acted in good faith, both the FLSA and NYLL afford courts discretion when awarding liquidated damages. *See* 29 U.S.C. § 260; N.Y. LAB. LAW § 663(1). Yet, an employer who defaults, like Defendants, has failed to make such a showing of good faith. *See Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM) (SMG), 2011 WL 4962397, at *4 (E.D.N.Y. Oct. 18, 2011). Because there are "no meaningful differences" between the FLSA and NYLL liquidated damages provisions, a party may not recover duplicative liquidated damages for the same conduct. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).

Therefore, I respectfully recommend that Palaghita be awarded liquidated damages equal to the total amount of unpaid wages due or $31,471.38.

## B.  Unlawfully Withheld Taxes

Palaghita also alleges violations of the NYLL's prohibition on unlawful deductions from an employee's wages, namely taxes not paid to the relevant government authorities. (Palaghita Decl. ¶¶ 18–19; Compl. ¶¶ 40–42); *see* N.Y. LAB. LAW § 193; N.Y. COMP. CODES R. & REGS. tit. 12, § 146-2.7; *Humphrey v. RAV Investigative & Sec. Servs.*, 2016 U.S. Dist. LEXIS 177572, at *27–28 (S.D.N.Y. Nov. 29, 2016). Accordingly, I respectfully recommend that Palaghita be awarded $21,000 in unlawfully withheld taxes.

C.   Statutory Damages

Under the NYLL, employers must furnish their employees with a notice and acknowledgement of the employee's wage rate at the time of hire. N.Y. LAB. LAW § 195(1). Employers are additionally required to furnish their employees with accurate, specifically enumerated wage statements each pay period. *Id.* § 195(3). Wage statements should include the dates of work, the employer's address and telephone number, the applicable rate of pay, and any deductions and allowances claimed. *Id.*

For violations of section 195(1), plaintiffs may recover damages at the rate of "fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars." N.Y. LAB. LAW § 198 (1–b). As of February 27, 2015, for violations of section 195(3), plaintiffs may recover damages at the rate of $250 for each work day that the violations occurred or continue to occur, not to exceed $5,000. N.Y. LAB. LAW § 198(1-d); *Estrada v. Giovanni's Italian Pizzeria, Inc.*, No. 16 Civ. 6162 (PGG) (GWG), 2020 WL 3166964, at *5 (S.D.N.Y. June 15, 2020). Remedies for statutory violations "may be enforced simultaneously or consecutively so far as not inconsistent with each other." N.Y. LAB. LAW § 198(2)

Defendants failed to provide Palaghita with written notice at hire containing the information set forth in section 195(1) and wage statements each pay period in accordance with section 195(3). (Palaghita Decl. ¶¶ 9, 20; Compl. ¶¶ 25, 43). Because he worked for more than 100 days during which violation of section 195(1) was ongoing and he worked more than twenty days after February 27, 2015, he is entitled to $10,000 in statutory damages.

D. Pre- and Post-Judgment Interest

Plaintiffs may recover prejudgment interest for claims brought under the NYLL. *Piedra v. Ecua Rest., Inc.*, No. 17-CV-3316 (PKC) (CLP), 2018 WL 1136039, at *16 (E.D.N.Y. Jan. 31, 2018), *adopted by* 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018). Under New York law, prejudgment interest is assessed at a rate of nine percent per annum. N.Y.C.P.L.R. §§ 5001(a), 5004. Interest may be calculated from a single reasonable intermediate date, which, in cases such as this, is sensibly the midpoint of a plaintiff's employment. *See Cabrera v. Canela*, 412 F. Supp. 3d 167, 186 (E.D.N.Y. 2019); *Fermin*, 93 F. Supp. 3d at 49. I respectfully recommend that Palaghita be awarded $15,512.37[8] in pre-judgment interest through the date of this Report and Recommendation plus additional interest calculated through the date that the Clerk of Court enters final judgment at the per diem rate of $7.76.[9]

Palaghita is also entitled to post-judgment interest. 28 U.S.C. §1961. I respectfully recommend that he be awarded post-judgment interest from the date of entry of judgment in accordance with section 1961.

E. Attorney's Fees

The FLSA and NYLL allow prevailing employees to collect "a reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b); N.Y. LAB. LAW § 198. Plaintiffs seeking

---

[8] Pre-judgment interest is calculated using the following formula: (total compensatory damages due to plaintiff) X .09/365 X (number of days from midpoint date to the date the Clerk of the Court enters judgment). Plaintiff suggested the reasonable intermediate date of March 1, 2016 from which to calculate accrued interest. (Dkt. No. 30-5).

$31,471.38 X .09/365 X (1999 days)

[9] $31,471.38 X .09/365

reimbursement of attorney's fees bear the burden of proving the reasonableness and the necessity of the hours spent and the rates charged. *Fermin,* 93 F. Supp. 3d at 51.

A district court has broad discretion to determine the reasonable amount of attorney's fees to be awarded. *See, e.g.*, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 183, 190 (2d Cir. 2008); *Torres v. 894 Dekalb Pizza Corp.*, No. 19-CV-5750 (AMD) (SMG), 2020 WL 8768258, at *9 (E.D.N.Y. Dec. 28, 2020), *adopted by* 2021 WL 848849 (Mar. 5, 2021). In this Circuit, courts calculate the presumptively reasonable attorney's fees as the product of a reasonable hourly rate and hours reasonably expended on the litigation. *Torres*, 2020 WL 8768258, at *9 (citing *Arbor Hill*, 522 F.3d at 183). Courts generally use the prevailing hourly rates in the district in which they sit. *Chen v. JP Standard Constr. Corp.*, No. 14-CV-1086 (MKB) (RLM), 2016 WL 2909966, at *15 (E.D.N.Y. Mar. 18, 2016) (citing *Arbor Hill*, 522 F.3d at 191), *adopted by* 2016 WL 2758272 (May 12, 2016). "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Martinez v. New 168 Supermarket LLC*, 19-CV-4526 (CBA) (SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (collecting cases), *adopted by* 2020 WL 5259056 (Sept. 3, 2020).

The Court must next examine counsel's contemporaneous time records and assess the reasonableness of the hours expended based on the court's experience, knowledge of the case, and the evidence and arguments presented. *See Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 302–03 (E.D.N.Y. 2012). When a plaintiff's billing record is excessive, it is within the court's discretion to reduce the fees requested. *See Kliger v. Liberty Saverite Supermarket Inc.,* No. 17-CV-02520 (FB) (ST), 2018 WL 4782342, at *10 (E.D.N.Y. Sept. 17, 2018), *adopted in relevant part by* 2018 WL 4783964 (Oct. 3, 2018).

Palaghita's submissions reflect $19,380[10] in attorney's fees to compensate for a total of 50.6[11] hours at a rate of $400 per hour for attorney time billed and $100 per hour for paralegal time. (*See* Dkt. No. 30-6). Cilenti was admitted to the practice of law in 1997. (*Id.* ¶ 78). His firm has handled more than 1,000 wage and hour cases in the past ten years. (*Id.*). Cilenti does not provide his paralegals' qualifications. However, the requested rates fall within the range typically approved by this Court. *See Hernandez v. Delta Deli Mkt. Inc.*, 18-CV-00375 (ARR) (RER), 2019 U.S. Dist. LEXIS 23756, at *24–25 (E.D.N.Y. Feb. 12, 2019), *adopted by* 2019 U.S. Dist. LEXIS 35304 (March 4, 2019); *Sajvin v. Singth Farm Corp.*, No. 17-CV-04032 (AMD) (RER), 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018), *adopted by* 2018 WL 4211300 (Sept. 4, 2018). Therefore, I find the requested hourly rates to be reasonable.

Consistent with the Court's jurisprudence, Palaghita submits contemporaneous billing records displaying the date, timekeeper, description of the activity, and total hours worked on that activity by the tenth of an hour, (Dkt. No. 30-6); *see N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983), and Cilenti's declaration, (Dkt. No. 30). The billing records calculate total fees as the product of the hours each attorney or paralegal worked and the rates requested. (Dkt. No. 30-6). After careful review of the billing records and given the Court's experience with wage and hour cases, the Court's knowledge of this case, and the evidence presented, I find the hours billed to be reasonable. *See Liu II*, 2021 U.S. Dist. LEXIS 99088, at *24 (finding 143 hours billed reasonable for a three-year litigation involving multiple plaintiffs,

---

[10] There is one mathematical error in Cilenti's calculations for the entry dated May 7, 2020. Cilenti spent 2.9 hours "[r]evis[ing]/finaliz[ing] draft of motion to strike." Cilenti's rate of $400 for 2.9 hours amounts to $1,160, not $1,560 as Cilenti's calculations suggest. (*See* Dkt. No 30-6 at 8).

[11] Cilenti totals the hours expended as 49.3, (Dkt. No. 30-6 at 8; Cilenti Decl. ¶ 78); however, his records contain 50.6 hours of attorney and paralegal time billed, (*see* Dkt. No. 30-6).

failed mediation, and Defendants who failed to comply with discovery requests or otherwise participate in the litigation); *Luk v. ABNS NY Inc.*, No. 18-CV-5170 (AMD) (RLM), 2021 WL 829417, at *7 (E.D.N.Y. Feb. 9, 2021) (awarding attorney's fees for 165.4 hours expended including arbitration and two-day trial), *adopted sub nom. Ying Ying Dai v. ABNS NY Inc.*, 2021 WL 826014 (Mar. 3, 2021).

I respectfully recommend that Palaghita be awarded $19,380 in attorney's fees.

F. <u>Costs</u>

A prevailing plaintiff is entitled to recover costs of the litigation. 29 U.S.C. § 216(b); N.Y. LAB. LAW § 663(1). Palaghita requests $620 in costs including fees for filing and process service. (Cilenti Decl. ¶ 80; Dkt. No. 30-6 at 8). He does not provide supplemental material such as receipts or invoices to substantiate the request. But the Court may take judicial notice of the District's filing fee. *See, e.g.*, *Joe Hand Promotions, Inc. v. Elmore*, No. 11-CV-3761 (KAM) (SMG), 2013 WL 2352855, at *12 (E.D.N.Y. May 29, 2013) (collecting cases). Therefore, I find it appropriate to take judicial notice of this District's $400 filing fee. (*See* Dkt. No. 1 Entry dated 3/15/2019 noting "filing fee $400, receipt number ANYEDC-11291285."). I respectfully recommend that Palaghita be awarded $400 in costs.

## **CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Court grant in part Palaghita's motion to strike the Answer and enter default judgment against all Defendants. Palaghita should be awarded damages totaling $129,235.13, consisting of: (1) $29,934.48 unpaid overtime wages, (2) $1,536.90 unpaid gap-time wages, (3) $31,471.38 liquidated damages,

(4) $21,000 unlawfully withheld taxes, (5) $10,000 statutory damages, (7) $19,380 attorney's fees, (8) $400 costs, (9) $15,512.37 pre-judgment interest. Palaghita should also be awarded additional pre-judgment interest calculated through the date that the Clerk of Court enters final judgment and post-judgment interest awarded from the date judgment is entered to the date of payment.

Palaghita's counsel is hereby directed to serve copies of this Report and Recommendation upon Defendants by regular and certified mail and to file proof of service with the Clerk of the Court promptly thereafter. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Allyne R. Ross within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.


*Ramon E. Reyes, Jr.*
Hon. Ramon E. Reyes, Jr.
United States Magistrate Judge
Dated: August 20, 2021

31

**APPENDIX**

I.  **Unpaid Wages[12]**

|  | **Period 1** | **Period 2** | **Period 3** |
|---|---|---|---|
| **Date Range** | 9/7/2014–9/20/2014 | 9/21/2014–12/31/2016 | 1/1/2017–10/1/2017 |
| **Weeks Worked** | 2 | 118 | 39 |
| **Average Overtime Hours per Week** | 15 | 15 | 15 |
| **Annual Salary** | $60,000 | $70,000 | $72,500 |
| **Hourly Rate[13]** | $20.98 | $24.48 | $25.35 |
| **Additional Overtime Owed per hour** | $10.49 | $12.24//$36.72[14] | $12.67 |
| **Overtime Wages Due [15]** | $314.70 | $22,215.60[16] | $7,411.95 |
| **Gap Time Wages Due[17]** | $0 | $979.20 | $557.70 |
| **Total Wages Due per Period** | $314.70 | $23,194.80 | $7,969.65 |

**TOTAL Unpaid Wages:   $31,479.15[18]**

---

[12] Calculations based on Palaghita's declaration, (Palaghita Decl. ¶¶ 5–9), and the damages spreadsheet helpfully provided by his counsel, (Dkt. No. 30-4).

[13] Hourly Rate = Annual Salary / 52 Weeks / 55 Hours

[14] For the week that Palaghita received no wages, he is owed an additional $36.72 per overtime hour worked.

[15] Overtime Wages Due = Overtime Hours X Overtime Owed per hour X Weeks Worked

[16] (15 X $12.24 X 118) + (15 X $24.48 X 1)

[17] Plaintiff was not paid for the first week of January 2015 ($24.48 X 40), or for the final two days of his employment ($25.35 X 22). (Palaghita Decl. ¶¶ 15, 17).

[18] Due to what appear to be rounding differences, the amount calculated by the Court is $7.77 greater than that requested. I respectfully recommend awarding the lesser amount requested ($31,471.38). *See* FED. R. CIV. P. 54(c).